UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY LISCOME,

      Plaintiff,

v.                                                    CASE No. 8:07-CV-2012-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

      The plaintiff, who was forty-four years old at the time of the administrative hearing and who has a ninth grade education, has worked as a landscape laborer, roofer, fruit and vegetable picker, plastics factory

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

machine tender, and forklift driver (Tr. 28, 298). He filed claims for Social Security disability benefits and supplemental security income, alleging that he became disabled due to lower back, leg, and hip problems (Tr. 102). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. At the hearing, the plaintiff, through counsel, withdrew his claim for disability benefits because his date last insured preceded his amended alleged onset date (Tr. 294-95). The law judge found, with respect to the claim for supplemental security income payments, that the plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, status post arthroscopic diskectomy at L4-5 and L5-S1 due to herniated disks; hypertension; gastritis; hemorrhoids; and depression and anxiety (Tr. 30). The law judge concluded that these impairments limited the plaintiff to light work with a sit/stand option and a restriction to occasional postural activities (id.). In addition, the law judge found that the plaintiff can maintain attention, concentration, and pace for simple, unskilled tasks (id.). The law judge determined that these limitations prevented the plaintiff from returning to past work (Tr. 28). However, based

-2-

upon the testimony of a vocational expert, the law judge ruled that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as small products assembler, arcade attendant, and merchandise marker (Tr. 30). Accordingly, the law judge decided that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g).  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Richardson v. Perales,

402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact

made by administrative agencies . . . may be reversed . . . only when the

record compels a reversal; the mere fact that the record may support a

contrary conclusion is not enough to justify a reversal of the administrative

findings."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en

banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

1963).

Therefore, in determining whether the Commissioner's decision

is supported by substantial evidence, the court is not to reweigh the evidence,

-4-

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff pursued his claim for benefits primarily on the ground that he was physically disabled from working. The law judge in a very thorough decision concluded that, while the plaintiff suffers from severe physical impairments, he was able to perform a range of light work and was therefore not disabled (Tr. 30). As the Commissioner points out, the plaintiff does not assert any challenge to the law judge's decision regarding the plaintiff's physical limitations.

The plaintiff, rather, raises two issues that relate to his mental status. Notably, the plaintiff's testimony focused mainly on his physical problems, and he commented on his mental condition only briefly. Thus, while the plaintiff said he did not read well, he acknowledged reading newspaper articles, although he might not understand some words (Tr. 299).

-5-

He said also that his concentration is affected so that he will sometimes leave the stove on (Tr. 308). He said he has problems remembering directions, which has just happened in the last eight months (Tr. 309). He added that he has memory problems (Tr. 315). The plaintiff also said that he used to have anger control problems but that is no longer the situation for the preceding year and a half "since I've been living for the Lord" (Tr. 315-16).

The law judge pointed out that the plaintiff has not sought mental health treatment and takes no psychotropic medication (Tr. 27). Nevertheless, the law judge concluded that the plaintiff has moderate or less restriction of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (Tr. 23). Accordingly, the law judge concluded that the plaintiff's limitations in attention, concentration, and pace restrict him to simple, unskilled tasks (Tr. 30). The minimal evidence in the record concerning the plaintiff's mental status does not compel the conclusion that the plaintiff has greater mental functional limitations.

The plaintiff argues that the law judge should have developed whether the plaintiff had a learning disorder that would prevent him from

-6-

performing the jobs identified by the vocational expert. This contention is unpersuasive.

The law judge was fully aware of the circumstances relied upon by the plaintiff in support of a learning disorder since he recited them in his decision (Tr. 22; see also Tr. 19). The law judge, however, stated (Tr. 22):

> I find the claimant has no severe cognitive impairment. On the Claimant's Statement When Request for Hearing is Filed, received on September 8, 2003, the claimant stated he wanted IQ testing because he is a "slow learner." The claimant testified at the hearing that he has difficulty with memory and cannot remember and carry out instructions. His memory problems had just started about eight months prior to the date of the hearing, or approximately January 2005. He alleged that he cannot read or write very well. He stated he was unable to obtain a GED because he was told he is illiterate. Despite these difficulties, the claimant lived with and cared for his elderly mother until she was placed in a nursing home. Since then, he has lived alone and functioned independently. He drives every other day.

The plaintiff argues that this was the only reason given by the law judge to support his finding of no severe cognitive impairment and that it was inadequate because it had been only three weeks since the plaintiff's mother had entered the nursing home (Doc. 14, p. 10). The law judge,

-7-

however, could reasonably conclude that a severe cognitive impairment was
inconsistent with the plaintiff's ability to assist his mother and to drive every
other day.  He could also reasonably think that, if the plaintiff had a severe
cognitive impairment, he could not function independently for even three
weeks.  Consequently, if, as the plaintiff asserts, these were the only reasons
given by the law judge for finding no severe cognitive impairment, they
would, nevertheless, be sufficient to support that finding.

In fact, however, the plaintiff is wrong; in the very next
paragraph the law judge gave additional reasons.  Thus, he stated (Tr. 22):

> The claimant has sought medical treatment,
> including treatment for depression and anxiety;
> however, he has not complained of a cognitive
> impairment, inability to learn, remember, and carry
> out instructions, or any other such symptoms.  The
> claimant has primarily performed unskilled work in
> the past and continued that work until his back
> impairment caused him to stop.   He has also
> performed semi-skilled work as a forklift operator.
> The record in total does not establish that the
> claimant has such an impairment which would
> preclude him from performing the mental demands
> of unskilled work.

The circumstances articulated by the law judge plainly support
a finding of no severe cognitive impairment.  The plaintiff's work history, in

-8-

particular, refutes the allegation of such an impairment. Notably, with respect to the job of forklift driver, which is the job the plaintiff said he held the longest, the plaintiff indicated that he used technical knowledge or skills (Tr. 103).

The allegation of a severe cognitive impairment is also contradicted by an experiment that the plaintiff's lawyer asked him to perform prior to the hearing. In connection with the plaintiff's physical problems, his lawyer asked the plaintiff to perform a test concerning the repetitive lifting and carrying of a gallon of liquid (Tr. 307). The plaintiff was able to remember the instructions and perform the test (Tr. 307-08). This capability further bolsters the conclusion that the plaintiff did not have a severe cognitive impairment.

The plaintiff also asserts that he asked the law judge for an I.Q. test and that the law judge rejected the request (Doc. 14, p. 10). In fact, the request was simply written on the form asking for an administrative hearing (Tr. 99). In all events, at the hearing, the plaintiff's lawyer withdrew requests for neurological and psychological evaluations (Tr. 295). Furthermore, the law judge obviously concluded that there were no gaps in the record that

-9-

warranted an I.Q. test since he stated that, regardless of the withdrawal of the requests for evaluations, he would order one on his own if he felt a need for further development (id.).

      The plaintiff also refers to the Dictionary of Occupational Titles ("DOT") to suggest that the plaintiff may be unable to carry out the jobs that the law judge found that the plaintiff would be able to perform (Doc. 14, pp. 11-12). The law judge, however, did not refer to the DOT and was not required to do so. The law judge, rather, relied upon the testimony of a vocational expert. Significantly, the expert was present at the hearing and heard the plaintiff's testimony concerning his reading capabilities. Moreover, the expert was aware of the plaintiff's work history and, in fact, testified about it (Tr. 319). The expert, being informed of those matters and having considered the pertinent hypothetical question, opined that the plaintiff could perform the jobs of small products assembler, arcade attendant, and merchandise marker. The expert's testimony related directly to the plaintiff's situation and was specific to the plaintiff's profile. The DOT, on the other hand, simply provides general information. "The DOT itself states that it is not comprehensive" and instructs users to supplement the data with local

information.  Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).  Consequently, even if there were a conflict in this case between the DOT and the expert's testimony (and it is not clear that there is), the expert's testimony would trump the DOT.  Id. at 1229-30. Under these circumstances, the law judge could reasonably rely upon the expert's testimony that the plaintiff, despite any learning limitation, could perform the jobs of small products assembler, arcade attendant, and merchandise marker.

The plaintiff's second contention is that the law judge improperly rejected the opinion of Gregory C. Marone, Ed.D., a consulting psychologist (Doc. 14, pp. 13-16).  Following a clinical interview, but without the use of objective tests, Dr. Marone diagnosed the plaintiff with, among other things, major depression, recurrent, moderate/severe and academic disorder not otherwise specified (Tr. 133). Dr. Marone opined that the plaintiff's "current mental status did not appear conducive to full time competitive or even supportive employment" (id.).

Initially, it is noted that the law judge set forth the essence of Dr. Marone's report in his summary of the evidence (Tr. 19).  Moreover, as

-11-

previously indicated, the law judge considered Dr. Marone's report when

determining that the plaintiff did not have a severe cognitive impairment (Tr.

22).[2] Having demonstrated that he did not ignore or overlook Dr. Marone's

report, the law judge gave the following explanation for discounting Dr.

Marone's opinion that the plaintiff's mental status did not appear conducive

to full-time employment (Tr. 27):

> The claimant and his girlfriend told Dr. Marone
> that he depended completely upon her for financial
> support, as well as cooking, household chores,
> transportation, and basically everything except his
> personal care.   However, at the hearing, the
> claimant testified that he had cared for his mother
> until recently. He drove himself every other day to
> visit with her. He cooked and performed some
> household chores.   He lived alone and
> independently.   Dr. Marone noted the claimant
> walked and responded to questions very slowly.
> He required redirection to conversation and
> showed signs of mental blocking [with] mental
> "wandering." Dr. Marone suspected psychomotor
> retardation. No other treating or consulting doctor
> noted these symptoms prior to or after this date.
> They were not noted at the hearing. Dr. Marone
> diagnosed major depression and dysthymia. Dr.
> Marone assessed the claimant's mental status did
> not appear conducive to full-time employment or

---

[2]The law judge also considered the plaintiff's mental status in some depth in connection with the assessment of whether the plaintiff met, or equaled, an Appendix 1 listing (Tr. 23).

-12-

> even supportive employment. Although Dr.
> Marone is a consulting source, I give little weight
> to this assessment, as it is inconsistent with the
> medical evidence of record and the claimant's daily
> activities (Social Security Rule 96-2p). Also, the
> determination of disability is a matter reserved to
> the Commissioner (20 CFR 416.927(e) and Social
> Security Rule 96-5p).

The plaintiff contends that this explanation is inadequate. For several reasons, that contention is unpersuasive.

In the first place, Dr. Marone was a consulting examiner who saw the plaintiff only once. Consequently, contrary to the plaintiff's view, Dr. Marone's opinion is not entitled to the weight ordinarily given to opinions of treating physicians.

Moreover, Dr. Marone's opinion is conclusory. Thus, Dr. Marone's report does not indicate the extent of the plaintiff's mental functional limitations in the areas of activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 129-33). Further, there is no attempt to distinguish whether functional limitations are due to a learning disorder, or to depression or anxiety. Notably, the law judge found that the plaintiff had a severe impairment of depression and anxiety and, as a result, limited the plaintiff to simple, unskilled tasks (Tr. 19). This finding

-13-

makes it even more significant that Dr. Marone failed to identify the extent to which he based his opinion upon his diagnosis of major depression or of academic disorder NOS, since, with respect to the impairment of depression, there may be no inconsistency between Dr. Marone's opinion and the law judge's finding. In addition, there is no attempt in Dr. Marone's report to reconcile the plaintiff's work history with the opinion that he appears unable to work. The conclusory nature of Dr. Marone's opinion provides a recognized basis for discounting that opinion, even if Dr. Marone had been a treating psychologist. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Also, contrary to the plaintiff's criticism, the law judge did identify aspects of the medical record that were inconsistent with Dr. Marone's opinion. Thus, the law judge pointed out that, although Dr. Marone suspected psychomotor retardation, no other treating or consulting doctor noted those symptoms (Tr. 27). The law judge also stated that, while the plaintiff has sought medical treatment, "he has not complained of a cognitive impairment, inability to learn, remember, and carry out instructions, or any other such symptoms" (Tr. 22). The law judge said further that the plaintiff's

primary care physician at the health department did not refer the plaintiff to a mental health center, psychiatrist, psychologist, or any other mental health care provider (Tr. 27). The plaintiff has not attempted to show that this view of the medical evidence is incorrect.

The plaintiff objects to the consideration of his daily activities in the assessment of Dr. Marone's opinion (Doc. 14, p. 15). However, the law judge could reasonably take the plaintiff's daily activities into account in determining whether he was totally disabled, as Dr. Marone indicated he was. Further, the law judge stated in his decision that the plaintiff and his girlfriend told Dr. Marone that the plaintiff was completely dependent on the girlfriend, but that the plaintiff testified differently at the hearing, so that Dr. Marone's opinion was based on misinformation (Tr. 27). These also are valid reasons for discounting Dr. Marone's opinion.

The plaintiff also seeks to dismiss the law judge's reliance on the principle that the determination whether the plaintiff can sustain employment is an issue reserved to the Commissioner (Doc. 14, pp. 15-16). That principle is recognized by the Eleventh Circuit. See Lanier v. Commissioner of Social Security, 2007 WL 3120318 at *1 (11th Cir. 2007) (unpub. dec.). It is clearly

applicable here since Dr. Marone's opinion encompasses vocational factors and there is no indication that Dr. Marone is an expert in that area.

For these reasons, the law judge's discounting of Dr. Marone's opinion was reasonable and adequately explained. See Ogranaja v. Commissioner of Social Security, 2006 WL 1526062 at *1-*2 (11th Cir. 2006) (unpub. dec.).

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision, which is supported by substantial evidence and contains no reversible error, is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 24th day of December, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE